May 1943 Bedford, 1934 Bedford, thank you. Just give us one second, we've got some folks shuffling around. So Mr. Haspel, am I saying that right? Correct, your honor. Haspel, correct. Like the suits. What's that? Like the suits. Okay, you've got ten minutes, but you've reserved two minutes for rebuttal. So why don't we just wait a second, we have some folks coming in. This happened to me once before in the Third Circuit. I was arguing in Pittsburgh, which they don't argue very often, and a whole University of Pittsburgh law school came in. Well, we're always delighted to have visitors and students in particular. It's a great opportunity to see how our institutions of government work, and we're always proud to have them here. So we'll make sure we put on a good show, within reason. All right, so let's proceed, Mr. Haspel. You've got eight minutes out of the game. Good morning, your honors. Joseph Haspel for the appellants in this proceeding. Your honors, we're here with respect to a jurisdictional issue, specifically the limited jurisdiction of the bankruptcy court. This case presents a closed case, a case that was closed by the appellees. But why does the closure of the case have some sort of magical significance? It's unclear to me. You put a lot of stock on that, but there was still an escrow account that was part of the bankruptcy, right? No. It was not? No. How is it not part of the bankruptcy? It was created according to the confirmation plan, wasn't it? Yes, but that's not the end of the story. The escrow was created for a singular purpose by the plan. That purpose was fulfilled, and there was an order saying that the case is closed. Let me interrupt you. So your view then is that Loeb and Loeb was free to take the money that was in escrow and do with it what it wanted? No. Loeb and Loeb had a choice of one, and that choice was to return it to my clients. So where are you pointing to? In the plan or in anything else that says that's the case? Because the plan says that Loeb and Loeb has basically two choices to disburse funds in that escrow. Either at the direction of the court through a court order, or they can at any time dump it back into the court account. Your Honor, incorrect, respectfully. Why? Without cherry-picking that language, you could see in the plan and the confirmation order— You're not pointing to language, though. You're just sort of saying, ah, we all— What language? What language are you referring to? Well, there was ultimately when the mortgagee was paid and that escrow was created for the purpose of paying the mortgagee, that was when the order of the court became necessary. That order, which predated the closure of the case, indicated that the mortgagee gets paid X, and the remainder is returned to my clients. Where does it say the remainder is returned to your clients? Your Honor, it's in the settlement agreement and release, which was, I believe, docket number 243 on the bankruptcy docket. I have a copy with me, but that's what it says. Where is it in the appendix? Your Honor, I cite to the docket, and I cite to the docket that was contained in the appendix, which indicates where in the docket it was in the bankruptcy case, and I quoted it in the reply brief. Is it not in the appendix? The reference to it is in the appendix. But what's troubling to me, Your Honor, is this is an order that was drafted by Loeb, which indicates that the monies have to be returned to my client, and they didn't indicate it to the lower courts. You're not disputing that Loeb performed professional services? Well, I have to parse that. They performed professional services to- For the estate. No. Well, they did, and they got compensated for that through their fee application. The plan indicated that subsequent to the confirmation order and subsequent to the plan of reorganization, issues between counsel and my client were outside the plan. How did you intend to pay them? How did you intend to have them receive compensation for work that they were doing, the entitlement payment? Well, once that matter was settled, there would be money. I don't know. Excuse me? I didn't hear what you said. There was a dispute. The dispute was that my client believed that Loeb was, the Loeb bill was inflated. Right. There is New York law that deals with how attorneys and clients address issues. But your client believed anything was due? Oh, absolutely. So how did you plan to pay? With the funds that my client would receive. The funds weren't going anywhere, but there's a specific New York procedure for dealing with issues between attorney and client. There's a mediation process, and if that process isn't successful, my client would have been entitled to a jury trial. But what the court did here is they usurped the New York law, they allowed Loeb to effectively hold the escrow hostage, and they reopened a closed case, and I would like to get back to Judge Sullivan's issue of why that's important, because that defines the jurisdiction of the bankruptcy court. And the only time a- So what's your position as to why paragraph 55 of the plan didn't apply? Because paragraph 55 of the plan was specifically addressing the mortgagee. That escrow was created for a specific purpose. But it refers to legal fees for future litigation. If you read the entire- No, with all due respect, in context, it was the legal fees of the mortgagee. One has to read that entire provision to see it was only relating to the mortgagee. That was ultimately settled. There was a motion to confirm the settlement. There was the ultimate, the settlement agreement and release order that was issued by the bankruptcy court, and the bankruptcy court ordered at that point in time, you mortgagee, pursuant to your settlement agreement, get X, and the remainder goes to my client. And that is not what happened. So you're saying that that constituted, in essence, a court order that directed Loeb and Loeb to transfer the balance of the escrow to your client? Absolutely. And, Your Honor, what's troubled me, again, because I view this primarily as a jurisdictional issue, is we had a situation where the case was closed, and I get back to that, which means the only way Loeb could get to that, because Loeb closed the case by filing a final decree that said, all credits are paid, administration of the case is over, there's nothing left. That final decree was executed, and the only way that they could get to this is by making a motion to re-argue, a motion to reopen. Once they try to make the motion to reopen, the issue of the closure of the case comes into play. Okay? And once the issue, the only way that you can reopen a closed bankruptcy case, even when the court retains jurisdiction, is to show that the issue has a close nexus to the estate and the administration of the case. Is it your position that you don't owe Loeb and Loeb the amount they billed, or you don't think you got to pay them at all? I, once again, they did do services. They are entitled to be paid services. Those services- By your client. Absolutely. Absolutely. All right, but so this is all really about the delta between what you think they should be paid and the $93,000 that the bankruptcy court gave them. So we're talking really about the neighborhood of $60,000, something like that? I really don't recall what the- $93,000 is what the bankruptcy judge awarded to Loeb and Loeb, right? Okay, and I'm not sure where the court got the $30,000. Well, I thought in the record it indicated that you thought that they were entitled to 20 or in the 20s someplace. Okay, that sounds familiar. So that would be approximately $70,000 delta. Okay. So you think they're entitled to that, so this appeal is roughly, in your view, over around $20,000? No, I think the delta was $70,000. But to me, this appeal is about a jurisdictional question, okay? It may have an economic issue with respect to my clients, but I could tell you that we're here more on the jurisdictional question. Well, let me ask you about the jurisdictional question then, because everybody, there's a lot of reference to close nexus as a touchstone for determining bankruptcy court jurisdiction. But we've never adopted the close nexus rule, right? We seem to have what I think is a higher rule, which is that it can be provided for in the plan, and if the exercise of jurisdiction is requisite to effectuate a plan of reorganization. That seems to be, at least to me, suggests that the second circuit standard is more demanding than the close nexus standard that other circuits have adopted. Would you agree with that? I was under the impression that the second circuit was on board with close nexus, but if your standard is greater, I'm not going to argue- As recently as last month, we said that we have yet to adopt the close nexus test in any published opinion. Forgive me, I missed that. In any published opinion, it's not- Forgive me, Your Honor, I missed last month's decision. Well, that was a non-published decision. But the point is that there are a lot of bankruptcy court cases and district court decisions that channel this close nexus standard, but the second circuit has not. And so are you suggesting that we should adopt that standard? No, I believe that the idea of throwing a jurisdiction retention provision into a plan allows for issues like this, which I think do not belong going back to the bankruptcy court. And once again, on a jurisdictional basis, we're dealing with a court of limited jurisdiction for a limited purpose. And if you're allowed to get back into bankruptcy court when there's no issue that could relate to the debtor or the estate, regardless of whether it is within the plan that there's a retention of jurisdiction, there has to be some limitation to that. But your position is basically that any post-confirmation plan legal fees or dispute over legal fees, even with bankruptcy counsel, are beyond the jurisdiction of the bankruptcy court to resolve, is that right? No. Why not? Because we're dealing with this case and the plan in this case. In the plan in this case, it specifically said that post-confirmation services are outside the estate. It could have just as easily said that post-confirmation services up until the point of closure. So that would have been okay. Then one could argue that it had to do with the administration of the bankruptcy case. Here it can't be argued because the time frame for the legal fees under the plan was confirmation. And anything post-confirmation was specifically outside the plan, and the attorneys probably did that because it would not require them to go back for a fee application. If it was still part of the administration of the case, the attorneys would have to go back for a fee application for their post-confirmation services. To obviate that, we put in the plan post-confirmation services are not part of the estate. Thank you. Okay, thanks very much. You reserve two minutes for rebuttal. We'll now hear from, where did I put my list? Sorry. Mr. Hawkins. Good morning, your honors. Thank you very much for your time in advance. I'd like to speak to some of the issues that were raised just now by Mr. Haspel. First of all, he referenced the settlement agreement and release order, which he referenced as being in the docket at 243 of the bankruptcy court, and cited in his reply brief to the docket. The docket is in the appendix. This order is not. I couldn't find it. Moreover, so it's not only not part of the appendix, and therefore the appellants didn't do what FRAP 30A1 would require them to do. It was also never argued about in the briefs here by them, the initial brief here by them, or in a brief in the district court, or in a brief in the bankruptcy court. Literally the first time we've heard about this, and argument by ambush, that's not fair. There's a lot of references to the final decree and the application for a final decree. Is that referring to the same thing? No, your honor. Based on the quote of the reply, in the reply which appears about this document, what it's quoted to say loosely is that under this order entered in the end of July 2020, according to the description in the reply, Loeb was to disburse an amount of approximately $721,000 from the escrow account to the debtor. And that, according to, to paraphrase what they say in the reply, was all the money that was in the escrow. One thing we do know from the record here, your honors, is that in the motion we filed at a footnote, we explained that in fact on July 31, 2020, Loeb did disburse the $710,000 to the debtor, following apparently that order. Yet, obviously, there was still money left in the escrow. Otherwise, why would we have made the motion and why would- Why do you think the bankruptcy court had jurisdiction? I think the bankruptcy court had jurisdiction because whether under a close nexus test or even a more rigorous test, this situation was replete with indicia of how what the bankruptcy court considered and ruled was an interpretation and an administration of the plan and was pivotal to how the plan would distribute money to stakeholders, which is a fundamental process in this plan. Two places it says you must go get the bankruptcy court order in order to release this escrow. This escrow was created under the plan. When we were about to bring the motion- How much was in the escrow? Remind me the amount in the escrow. Initially, it was just above $2 million. Right, and that got paid down to what? And that got paid down after the $710,000 to an amount that was more than $100,000. It was about, and I'm afraid, $150,000. Okay, and what do you think, what provisions of the plan authorize payment of these fees to your firm? The provisions of the plan authorizing, the plan does not limit the use of the escrow. It says in paragraph 55 and paragraph 107, it says go get a bankruptcy court order, period, in those sentences. It does not refer to a mortgagee. And moreover, it's a misdirection in our estimation in the reply brief that says, look, paragraph 55 was labeled a specific thing with a headline. Put aside your opponent's spin on it. Just tell me in your own words, what provisions do you think authorize you to be paid this money? The plan provided no limitation on what those escrow funds would be used for. The plan, however, did require an order from the bankruptcy court. It also provided that the bankruptcy court, this would be at paragraph 13, was the determiner if something else in the plan stopped money that was estate money from going to the reorganized debtor, because it said subject to anything else in this plan. The most important consideration is maybe what was the money used for? The money was used to pay Loeb and Spiegel, Spiegel was an accountant, for work that was done post effective date of the plan, but that was required in the plan and the confirmation order in order to consummate the plan. Loeb provided an order to the bankruptcy court that was required in the plan in order to effect the consummation. Loeb spoke with the U.S. trustee about how the payments for distributions on claims under the plan would be reported to the U.S. trustee. Loeb counseled with regard to potential strategies for objecting to claims under the plan during the period of the consummation of the plan. All these things were creatures of the plan, and as I said, were required in order to get the plan consummated. Okay, but absent the escrow, are you saying that the bankruptcy court would have still had jurisdiction to handle this dispute? In other words, if the escrow had been turned over or the escrow had been exhausted, and there's this dispute between you and the debtor about what is owed for legal fees, is your view that that is within the jurisdiction of the bankruptcy court? It is, because for all those reasons I just said, it fell into the things that had to do with implementation and administration of the plan. Even if you took out the escrow for all those reasons that I just described, it was paying for work that needed to happen pursuant to the plan. And another point was what would have happened if we followed von Lavernoff's direction was that we were being asked to pay an administrative claim of the estate twice. Von Lavernoff, and this is in our motion, said, please use the money to pay Attorney Blumenfeld, who was an attorney that had previously worked during the bankruptcy for the debtor in possession. We said we can't do that because that administrative claim has already been paid. So we were being asked to pay an administrative claim, which you should do under plans, but not twice. You can't do that under plans. Separately, to finish the answer to your question, Your Honor, the plan expressly reserves jurisdiction, not just broadly to cover this, and that would be enough, but specifically with regard to any adjudications with regard to payment of professionals. It doesn't say whether they were in or outside of before or after the confirmation or effective date. Now, I mean, I'm looking at the reply brief, and I don't have this document, but it's quoted. Upon entry of the approval order, Loeb and Loeb shall pay to the debtor $710,000, which represents the balance of the escrow account. So, again, I don't have that. I guess it's a public record. I can probably rely on it if I go fish it out. But assuming that to be the case, why would there be anything left in the escrow after the approval order was signed? Your Honor, that's a good question, and had it been raised by the appellants at the bankruptcy court level or the district court level or even here, maybe we would have had a chance to address it. The fact is, I can tell you that, and you can see it in our motion, there was money left. And it even heightens the reason why we had to go to the bankruptcy. But I guess the question is, your argument, at least one of your arguments, is that the court has jurisdiction because it still had to do something with this escrow, and you're not even authorized to release money from the escrow without a court order. And Mr. Haspel is saying that, well, no, after the thing is over, you don't need a court order. Then the money just goes back to the debtor, the reorganized debtor. And so I'm trying to figure out, is your argument that you need a court order every time you cut a check from the escrow? We do need a court order every time we cut a check from the escrow. The only potential- But there was an order then here that says it's going to be 710, which represents the balance. So how do you have money that represents the balance and still have some left over? That's great math. Well, frankly, I think that order, as stated in the reply, is wrong because it wasn't the balance. There was money left. Maybe we should have accepted the interpretation and just taken the $150,000, but that's not what we do neither as a firm nor as an escrow agent. We knew there was money left in there, and that heightened the reason why we had to go to the bankruptcy court because in paragraph 107 of the plan, there is an ability to say you either go get an order or do something consistent with the plan. But when we were looking at this money, which didn't have an address on the envelope for, we needed to do what the plan permits and, frankly, required us to do in two paragraphs, 55 and 107, go get a bankruptcy court order or, as Your Honor said, put it in the court at our option, which we elected not to do. But your point is that had there been no dispute about attorney's fees, that you could not have returned what was ever left in the escrow without first getting the court to reopen the bankruptcy and then issue an order directing you to send it all to the debtor. Yes, in this specific set of circumstances, that's true because we didn't have the out of it's consistent with the plan because of the somewhat of a conundrum of there being money left over, even though this reference that's in the reply paper says that there wasn't money left over. And, you know, that raises a good point from the reply where the appellants are trying to say, well, had we resolved and we admit, had we been able to agree with Mr. Von Lavernoff about how to do this,  that's not the inaccurate characterization. We said we brought the motion because of that disagreement. But once we had talked about with him, we agree if we could have, we agree on doing this, it's quite possible what we would have done is taken a different avenue to get a court order, maybe a stipulated arrangement, something like that, rather than having to bring a full on motion that reopened the case in a more contested fashion. A couple more points, just in order, in rebuttal. Well, rebuttal, he gets rebuttal. Sorry, well, in addressing questions that he raised. He did, they did say, specifically Mr. Haspel said to the bankruptcy court how they anticipated At appendix 385, 388, there's a quote. It was always contemplated that Loeb, I insert the word Loeb, but that was the reference, would cut themselves a check from the escrow amount. Who's making this reference? This is Mr. Haspel at the bankruptcy court. It's the 12-22-20 hearing transcript. And it's at A385, 388 of the appendix. Another comment, whether or not there is a procedure under New York attorneys, New York law about how attorneys and clients' matters are settled. Two points on that. One, this plan reserved, as I said, jurisdiction for these matters. Two, it's not preserved for appeal. That issue is not stated in the issues on appeal. Both the district court said that, and then when they briefed it to the second circuit, they didn't say it. The complaint is that the bankruptcy court applied something other than Lodestar, not we missed the New York law avenue. The answer with regard to a question that you raised for the description in paragraph 55, I do think it's accurate to say that there was money that was being set aside, including for the debtor to use potentially in litigation. Litigation outside of litigation with the mortgagee? Admittedly, it was set aside with the mortgagee litigation in mind. But it points to the fact that this was not just money destined for the mortgagee. And in any case, the stand-alone sentence about going and getting a bankruptcy court order in 55 and 107 doesn't hook into that. Your argument, I guess, is that if once the mortgagee's dispute is resolved, it doesn't entitle you to ignore that portion of the plan that says you've got to get a court authorization before you disperse the escrow funds. Absolutely, Your Honor. And imagine an escrow agent that played fast and loose and maybe took a guess that it would be okay. That would be a wrong thing to do, certainly. Okay, so I think we have your arguments. We'll now hear from Mr. Haskell for two minutes. Thank you. Your Honor, as I set forth in my brief, the law is very clear as to ownership of escrow. An escrow is- When you made the comment about cutting a loan over check. Absolutely. As the owner of an escrow, one could authorize the payment to anybody they want. And it was contemplated that we'll give you the money that we owe you. But we're not going to let you dictate to us an absurd fee and then take it and hold the money hostage. You're going to either negotiate with us in good faith or we're going to go through the mediation. But at the end of the day, it's our money and we'll release it to you. That's the way it would work. Your Honor, it's important that we go back to this paragraph. I agree. What was in your mind about how this problem would be resolved? Either negotiation, mediation. If you couldn't reach an understanding on a dollar amount by negotiation, what's your understanding about how this issue would be resolved? Under New York law, a litigation would happen between the parties and it would be determined by a court. And a bankruptcy judge, in your view, would have no role in resolving this particular dispute? A post-confirmation attorney's fee dispute outside of the estate has no role to the bankruptcy court. Even though it could vary in value on the estate? It can't. The estate is over. The estate is done. We now have a reorganized letter. Thank you. But, Your Honor, again, I think what's important in my 16 seconds, I'd like to read paragraph 55, which I maintain is exclusively dealing with the mortgagee. It says, At close of the sale of its only asset, the debtor shall escrow with the debtor's counsel, lobe and lobe, to be held in the firm's attorney escrow account $2,250,000, which represents a calculation of $1,700,000 for unpaid default interest for the period August 30th, 2018, through August 2nd, 2019. $250,000 for estimated mortgagee legal fees. $200,000 for a legal fee reserve for future litigation by the debtor or its successes against the mortgagee. $75,000 for a legal fee reserve for litigation of the debtor's objection to the mortgagee's claim. And $20,459 for an interest reserve through July 13th, 2020. The mortgagee shall apply payments made in accordance with the applicable loan documents. Can you just give us a cite to that? It's cited many times. I can follow. There's a paragraph 55, which everybody, you're both relying on, right? Absolutely. But this is also the provision that has language that lobe and lobe shall release funds upon court orders, or they can at any time basically get out of the business and just dump the escrow into the court account. Right? But the provision has to be read in context. I understand your argument. Your argument is that once all those obligations are covered, then you no longer need a court order. That's really what you're arguing, right? I am arguing that. But in this situation, they nevertheless got the court order, and it was them who didn't tell the lower courts. The court order being what you referred to in your reply as the decree, but which is in the appendix, right? That's correct. And did you argue that below to the district court? I don't recall. Does he think that matters? I'm sorry, what did you say you don't recall? I don't recall. I don't know, but certainly an order within the court's docket is part of the record of the case. Well, but your arguments concerning it might be gone because you didn't raise it. I mean, this is really coming up for the first time in your reply brief, and you're quoting a document that's not in the appendix that you didn't argue to the district court below. And then you're telling us you don't recall whether you raised it? Correct. All right. Okay, thank you. Well, anyway, I think we got our money's worth, so thank you both. We will reserve decision. Thank you. You bet.